**Lequisha MITCHELL, and all persons similarly situated, Plaintiff,**

v.

**FORD MOTOR CREDIT COMPANY, et al., Defendants.**

Civil Action No. 98–CV–2012–TWT.

United States District Court,
N.D. Georgia,
Atlanta Division.

Nov. 25, 1998.

---

Don C. Keenan, Keenan Law Firm, Atlanta, GA, Mark D. Fischer, phv, Rawlings & Associates, Louisville, KY, for plaintiff.

Thomas M. Byrne, Sutherland Asbill & Brennan, Atlanta, GA, for defendants.

### *ORDER*

THRASH, District Judge.

This is a consumer fraud action which the Plaintiff seeks to prosecute as a class action. It is before the Court on Defendants' Motions to Dismiss [Doc. Nos. 2 and 3], Defendants' Motions to Dismiss

Amended Complaint [Doc. Nos. 15 and 16], and Plaintiff's Motion to File a Second Amended Complaint [Doc. No. 18]. For the reasons set forth below, the Court grants Defendants' Motions to Dismiss and denies Plaintiff's Motion to File the Second Amended Complaint.

## I. BACKGROUND

This case involves a dispute between Lequisha Mitchell, the lessor of a new vehicle, and two finance companies, Ford Motor Credit Company and Primus Automotive Financial Services. The later is a wholly owned subsidiary of the former. Ford Motor Credit finances domestic-made vehicles, and Primus finances vehicles manufactured abroad. Ms. Mitchell entered into a lease for a new automobile with Ford Motor Credit. She seeks to assert claims on behalf of herself and all individuals and businesses in Georgia who leased vehicles through these two companies before 1998. She seeks a panoply of relief including compensatory and punitive damages based upon her allegations of unconscionability, fraud and breach of contract.

Plaintiff leased a new Ford Explorer from Gene Evans Ford in August, 1997. She leased the vehicle primarily for personal or household use. Ms. Mitchell financed the lease through Defendant Ford Motor Credit.[1] According to the lease, she financed a capitalized cost of $23,846.83 minus reductions for rebates and cash paid. The lease specified depreciation of $6,761.46 over the lease term resulting in a residual value of $15,376.20. Ms. Mitchell's lease disclosed "lease charges" of $2,258.22. As with most leases, the monthly payments are based upon the depreciation plus tax and lease charges. Over twenty-four months, Ms. Mitchell agreed to pay $394.61 per month for a total of $9,470.64. She alleges that Ford Motor Credit charged her an "acquisition fee" as part of the "lease charges" that were not disclosed in the lease. She alleges that Ford Motor Credit and Primus routinely include acquisition fees in "lease charges" unbeknownst to their customers. As alleged by Ms. Mitchell, Defendants charge acquisition fees of $425.00 or a fixed percentage of the capitalized cost of a vehicle.

In July, 1998, Plaintiff filed this suit in the Superior Court of Fulton County, Georgia. She asserted four claims: violation of the Georgia Fair Business Practice Act, O.C.G.A. § 10–1–390 et seq.; unconscionability; fraud; and breach of contract. Defendants removed the case to this Court on the basis of diversity jurisdiction. The amount in controversy exceeds $75,000.00 when the claims of Ms. Mitchell and the putative class are aggregated. *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1357 (11th Cir.1996). Defendants then filed separate Motions to Dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief could be granted. Subsequent to the filing of those motions, Ms. Mitchell filed an Amended Complaint dismissing her Georgia Fair Business Practice Act claim but maintaining her other claims. Defendants then filed Rule 12(b)(6) Motions to Dismiss the Amended Complaint. Ms. Mitchell has also filed a Motion to File a Second Amended Complaint in which she alleges the existence of fiduciary duties between the parties and seeks to add a second class representative.

## II. MOTION TO DISMISS STANDARDS

A complaint should be dismissed under Rule 12(b)(6) only where it appears beyond doubt that no set of facts could support the plaintiff's claims for relief. Fed.R.Civ.P. 12(b)(6); *see Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Linder v. Portocarrero*, 963 F.2d 332 (11th

---

1. Actually, the lease identifies Ford Credit Titling Trust as the holder of the lease. For purposes of these motions, Defendants do not distinguish between Ford Credit Titling Trust and Ford Motor Credit Company. The Court will likewise consider these two entities as one for purposes of these motions.

Cir.1992). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construes them in the light most favorable to the plaintiff. *See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.,* 711 F.2d 989, 994–95 (11th Cir.1983). Notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.,* 753 F.2d 974, 975 (11th Cir.1985), *cert. denied,* 474 U.S. 1082, 106 S.Ct. 851, 88 L.Ed.2d 892 (1986). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *Id.*

### III. DISCUSSION

■ This case concerns Plaintiff's lease of a vehicle from Ford Motor Credit Company. Plaintiff did not attach a copy of the lease agreement to her Complaint. A copy of the lease agreement is attached to the Motion to Dismiss of Defendant Ford Motor Credit Company. In deciding Defendants' motions, the Court will consider the copy of the lease in question which Defendants attached to their motions. Where a plaintiff relies on a document in the complaint and the document is central to the claim, the Court may consider the document as part of the pleadings for purposes of a Rule 12(b)(6) motion. *Brooks v. Blue Cross and Blue Shield of Florida, Inc.,* 116 F.3d 1364, 1369 (11th Cir.1997). The Defendants' attachment of such document does not require the motions to be converted into motions for summary judgment. *Id.* In her response to the Motions to Dismiss, Plaintiff does not object to consideration of the lease agreement or ask that the motions be considered as summary judgment motions. In this diversity action, Georgia law applies to Ms. Mitchell's claims as they are state causes of action arising from a contract entered into in Georgia.

### A. UNCONSCIONABILITY

Ms. Mitchell raises as her first cause of action a claim of unconscionability. Georgia has codified the doctrine of unconscionability as applied to consumer leases in its Uniform Commercial Code at O.C.G.A. § 11–2A–108. Subsections (1) and (2) of this statute are its only substantive provisions; the other two subsections are procedural. As provided in Subsection (1), a finding of unconscionability in a lease contract allows the Court three options. It may refuse to enforce the lease, enforce the remainder of the lease without the unconscionable clause, or limit the application of any unconscionable clause to avoid unconscionable results. Subsection (1) does not provide for the recovery of damages. In the next paragraph, Section 11–2A–108(2) allows the Court to grant "appropriate relief" if the Court finds a consumer lease has been induced by unconscionable conduct or that unconscionable conduct occurred in collecting payments from a lease.

■ The Court finds that Plaintiff has failed to state a claim upon which relief can be granted in her claim for damages for unconscionability. First, Section 11–2A–108 does not provide a cause of action. It codifies the common law defense of unconscionability to the enforcement of a contract. *Cowin Equip. Co. v. General Motors Corp.,* 734 F.2d 1581, 1582 (11th Cir.1984) (construing similar language in Alabama and Ohio's UCC). In its review of the statute and relevant cases, the Court finds no authority that the doctrine of unconscionability provides a basis for affirmative relief. Ms. Mitchell argues that language in Section 11–2A–108(4)(c) provides support for her recovery. This procedural sub-section provides that "[i]n determining attorney's fees, the amount of the recovery on behalf of the claimant under subsections (1) and (2) is not controlling." The Court finds this argument unconvincing. If the Georgia Legislature intended to spin a new cause of action from the wool of a traditional contracts defense, the innovative provision would surely appear in the substantive language of the statute.

■ Secondly, even if the Court were inclined to embrace a new cause of action,

Ms. Mitchell's allegations describe neither unconscionable contracts nor conduct. Georgia courts have described unconscionable contracts as those that "no sane man not acting under a delusion would make and that no honest man would take advantage of." *Stefan Jewelers, Inc. v. Electro–Protective Corp.,* 161 Ga.App. 385, 288 S.E.2d 667 (1982). Unconscionable conduct must "shock the conscience." *BMW Financial Services, N.A. v. Smoke Rise Corp.,* 226 Ga.App. 469, 486 S.E.2d 629 (1997). Determining whether a contract is unconscionable is a question of law for the Court. *Zepp v. Mayor & Council of Athens,* 180 Ga.App. 72, 348 S.E.2d 673 (1986).

The basis of Ms. Mitchell's claim is that "a substantial and hidden charge for alleged lease acquisition fees was added to all of the class members' leases without disclosure." Amended Complaint, ¶ 34 [Doc. No. 9]. Ms. Mitchell does not, however, allege that the total amount of the lease payments was unconscionable—and clearly it was not. In essence, her complaint is the failure to disclose a fee that was included within a total amount she agreed to pay. The total amount that she financed included a lease or rent charge of $2,258.22. The lease charge was disclosed in clear terms on the front of the lease. The lease charge included the dealer's profit, overhead, and the administrative fee.[2] Itemizing the lease charge is not required by the federal law governing leases. The Consumer Leasing Act, 15 U.S.C. § 1667, *et seq.* (CLA) is part of the Truth–in–Lending Act, 15 U.S.C. § 1601, *et seq.* The CLA seeks "to assure meaningful disclosure of the terms of leases . . . so as to enable the lessee to compare more readily the various lease terms available to him." 15 U.S.C. § 1601(b). Toward that end, the CLA requires specific disclosures.

It attempts to balance the need for adequate disclosure to enable informed decisions with the danger of information overload defeating that purpose. At the time of the transaction at issue, the CLA did not require itemization of the lease charge. *See* 12 C.F.R. § 213.4(g) (1995) (specifying required disclosures in leases); *see also* 12 C.F.R. § 213.4 (1998). Moreover, Ms. Mitchell does not allege that the lease offered by Defendants fails to comply with the CLA. "[T]hat which the law itself specifically permits cannot be 'unconscionable.'" *Zepp* at 78, 348 S.E.2d 673. *See also Avery v. Aladdin Prods.,* 128 Ga.App. 266, 196 S.E.2d 357 (1973). Because it is unnecessary for this decision, the Court does not address whether the CLA preempts claims of unconscionability or fraud. The Court finds as a matter of law that the lease entered into by Ms. Mitchell and Ford Motor Credit was not unconscionable. Accordingly, her allegations of unconscionability should be dismissed.

### B. FRAUD

■■■ In her second cause of action, Ms. Mitchell alleges that Defendants' concealment of the lease acquisition fees constitutes fraudulent nondisclosure and fraudulent misrepresentation. The Court will address first the allegation of nondisclosure. According to Georgia law, nondisclosure is actionable if it involves the "[s]uppression of a material fact which a party is under an obligation to communicate." O.C.G.A. § 23–2–53. "The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." *Id.* In her Amended Complaint, Ms. Mitchell does not contend that her dealings with Ford Motor Credit constituted a confidential or fiduciary relationship giving rise to a duty to disclose.[3] The Court also finds

2. Indeed, as Defendants note, the lease charge could have represented 100% profit and not have been unconscionable. The amount of the lease or rent charge was fully and plainly disclosed. If Ms. Mitchell thought these charges were unconscionable, she was free to shop for better terms from other deal-ers or negotiate a lower price with Gene Evans Ford or Ford Motor Credit.

3. In her proposed Second Amended Complaint, Ms. Mitchell seeks to allege the existence of a fiduciary relationship between her and Ford Motor Credit. As discussed below, the Court has denied her Motion to Amend

no "particular circumstances" in this case to impose a duty to disclose upon Defendants. Those cases where Georgia courts have found particular circumstances giving rise to a duty to disclose involve dependent relationships sufficient to overcome the will of a party. *See Cochran v. Murrah*, 235 Ga. 304, 219 S.E.2d 421 (1975). Ms. Mitchell does not allege any justifiable dependence by her on Defendants. In support of her allegation, she argues that a vendor's knowledge and concealment of material facts constitutes fraud from the circumstances. Here, however, no concealment of a material fact occurred. Ms. Mitchell knew the terms of her lease, and bargained for the total payment and amount of the installments. The apportionment of part of the lease charge to an acquisition fee is not material. The Court, therefore, finds that no duty existed on the part of Ford Motor Company to disclose the acquisition fee which comprised part of the agreed upon lease charge.

▇▇▇ Ms. Mitchell also alleges "fraudulent misrepresentation through partial disclosure." Plaintiff's Memorandum in Opposition to Defendant Ford Motor Credit Company's Motion to Dismiss [Doc. No. 7], p. 8. The Court sees little distinction between Ms. Mitchell's allegation of nondisclosure and her charge of misrepresentation by failing to disclose all which was allegedly required. Nevertheless, the Court will consider the allegation. Georgia requires five essential elements for a tortious material misrepresentation constituting fraud: (1) the defendant made the representations; (2) that he knew at the time were false (or what the law regards as the equivalent of knowledge); (3) that he made them intentionally and for the purpose of deceiving the plaintiff; (4) that the plaintiff relied on such representations; and (5) that the plaintiff sustained the alleged loss and damage as the proximate result of their having been made. *Lister v. Scriver*, 216 Ga.App. 741, 456 S.E.2d 83 (1995). Ms. Mitchell does not allege anything appearing in the lease to be a misrepresentation. Allegations that the "lease charge" was not itemized to reveal the acquisition fee do not constitute allegations of a fraudulent misrepresentation. There being no allegation of affirmative misrepresentation, and there being no duty to disclose, Ms. Mitchell's claim of fraud should be dismissed. Because the Court dismisses the fraud claim on substantive grounds, the Court will not address Defendants contention that Ms. Mitchell failed to allege her fraud claim with the particularity required by Fed. R.Civ.P. 9(b).

## C. BREACH OF CONTRACT

▇▇▇ As to her breach of contract claim, Plaintiff argues that the lease contract between her and Ford Motor Credit did not authorize the collection of acquisition fees. Thus, she argues that no "meeting of the minds" occurred as to the payment of these fees, and therefore no contract existed. She then argues that Ford Motor Credit therefore breached the contract by charging this fee. Because an action for breach requires a contract, the Court will focus on Plaintiff's allegation confirming the existence of the contract. The elements of a claim for breach of contract are "the breach and the resultant damages to the party who has the right to complain about the contract being broken." *Budget Rent–A–Car of Atlanta, Inc. v. Webb*, 220 Ga.App. 278, 279, 469 S.E.2d 712 (1996). In determining whether a breach occurred, the Court first looks to the written contract. The contract Ms. Mitchell signed indicated that she

again her Complaint. Even if a second amending were allowed, these proposed allegations are meritless. Georgia law is clear that in most business dealings, no confidential or fiduciary relationship exists between the parties. "The vendor and vendee of property are not, by virtue of such fact, placed in a confidential relationship to each other, but on the contrary are presumed to be dealing at arm's length." *Lewis v. Alderman*, 117 Ga. App. 855, 855, 162 S.E.2d 440 (1968); *See also William Goldberg & Co. v. Cohen*, 219 Ga.App. 628, 637, 466 S.E.2d 872 (1995).

"agree[d] to lease this Vehicle according to the terms on the front and back of this Lease." Those terms listed the capitalized cost, the lease charges, monthly payments, and payments due at the lease signing, among other terms. Ms. Mitchell does not contend that she was charged more for the lease than the price to which she agreed. Nor does she contend that she received in return a vehicle different from that described in the lease. The Court, therefore, finds no allegation of breach of the terms of the agreement. Accordingly, Ms. Mitchell's claim for breach of contract should be dismissed.

### D. MOTION TO FILE SECOND AMENDED COMPLAINT

After Defendants filed their Motions to Dismiss Amended Complaint, Ms. Mitchell filed a Motion to file a Second Amended Complaint. The filing of this Second Amended Complaint would not change the Court's ruling, and would waste the resources of this Court and Defendants. The allegations contained therein differ from the first Amended Complaint in two ways. First, Plaintiff seeks to add a second class representative—this time, an individual who leased a car from Primus. This individual makes the same allegations as Ms. Mitchell. Rather than relying on an "alter-ego" theory to tie Primus to Ford Motor Credit's alleged wrongs, the Second Amended Complaint would offer a real-life "victim" of Primus' alleged deceit. However, the substantive flaws in Ms. Mitchell's allegations remain when asserted by a new representative.

 Secondly, Ms. Mitchell seeks to allege the existence of a fiduciary relationship between herself and Defendants in her Second Amended Complaint. She seeks to allege that Defendants train their agents to offer themselves as financial advisors, to portray that they are seeking the best lease terms for their customers. The Court cannot imagine a set of facts that would support these allegations given well settled Georgia law. As discussed above, Georgia law is clear that no fiduciary relationship exists between buyer and seller absent special circumstances not present here. The futility of a proposed amended complaint is a justifiable reason for denying leave to amend. *Motorcity of Jacksonville, Ltd. v. Southeast Bank N.A.*, 83 F.3d 1317, 1323 (11th Cir.1996) (*en banc*), vacated on other grounds *sub nom. Hess v. F.D.I.C.*, 519 U.S. 1087, 117 S.Ct. 760, 136 L.Ed.2d 708 (1997). Allowing Ms. Mitchell to amend again her Complaint would only delay the inevitable and would waste the time and resources of the Court and the Defendants. Accordingly, Plaintiff's motion should be denied.

### IV. CONCLUSION

For the reasons set forth above, the Court GRANTS Defendants' Motions to Dismiss the original complaint [Doc. Nos. 2 and 3], GRANTS Defendants' Motions to Dismiss Amended Complaint [Doc. Nos. 15 and 16], and DENIES Plaintiff's Motion to File a Second Amended Complaint [Doc. No. 18].